**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF** | § | |
| **AMERICA,** | § | |
| | § | |
| **v.** | § | **EP-12-CR-314-PRM** |
| | § | |
| **ANDREW HANSEN,** | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER GRANTING MOTION
FOR COMPASSIONATE RELEASE**</u>

On this day, the Court considered Defendant Richard Hansen's

[hereinafter "Defendant"] *pro se* "Motion for Compassionate Release

and/or to Modify Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)" (ECF

No. 72) [hereinafter "Motion for Release"], filed on September 17, 2020,

Defendant's  "Motion for Appointment of Counsel" (ECF No. 71)

[hereinafter "Motion for Counsel"], filed on September 17, 2020, the

Government's "Response to Defendant's Sentence-Reduction Motion"

(ECF No. 77) [hereinafter "Response"], filed on October 29, 2020, and

Defendant's "Reply to Government's Response in Support of Motion for

Compassionate Release" (ECF No. 78) [hereinafter "Reply"], filed on

November 16, 2020, in the above-captioned cause.  For the reasons

herein, the Court will grant Defendant's Motion for Release and deny Defendant's Motion for Counsel.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    Defendant's Conviction

Defendant is serving a sentence of 120 months' imprisonment for possession of material involving the sexual exploitation of children [hereinafter "MISEC"].  Presentence Investigation Report ¶ 3, Jan. 9, 2013, ECF No. 58 [hereinafter "PSR"].

On January 20, 2012, federal agents searched Defendant's residence, along with the residence of Defendant's girlfriend, after determining that the IP address assigned to Defendant was associated with the receipt and distribution of MISEC.  PSR ¶¶ 5–8.

As agents searched his residence, Defendant waived his Miranda rights and admitted that "he downloaded a lot of pornography and some of it was illegal."  PSR ¶ 11.  Defendant further admitted that he "would watch [MISEC] . . . then feel guilty and delete it."  PSR ¶ 12.

Thereafter, federal agents seized "various items including [a] laptop and desktop computers, five (5) external hard drives, and various electronic media."  PSR ¶ 14.  Agents performed a forensic examination

of the seized items and discovered approximately sixty-eight videos and 267 digital images depicting the sexual exploitation of children.  PSR ¶ 15.

On July 2, 2012, Defendant pleaded guilty to one count of receiving MISEC in violation of 18 U.S.C. § 2252.  J. Crim. Case 1, Jan. 18, 2013, ECF No. 66.  This crime carries a base offense level of twenty-two.  PSR ¶ 26.  The probation officer that prepared the PSR determined that a fourteen-level enhancement was warranted based on the nature and seriousness of Defendant's offense.  *Id.* at ¶¶ 27–38. Based on his prior criminal history, the probation officer assigned Defendant to Criminal History Category of one.  *Id.* at ¶ 41.

Defendant's prior criminal history consisted of a 2008 charge for operating a motor vehicle while under the influence of alcohol.  *Id.* at ¶ 40.  Defendant pleaded guilty to this charge and was sentenced to twelve months' probation.  *Id.*

The sentencing guidelines recommended that Defendant be sentenced to a term ranging from 188 to 235 months' imprisonment.  *Id.* at ¶ 66.  The Court departed from this recommendation and sentenced Defendant to a term of 120 months' imprisonment and a term of

3

supervised release for ten years.  J. Crim. Case 2–3.  In departing from the advisory guideline range, the Court concluded that a term of 120 months was sufficient but not greater than necessary to accomplish the purposes of the sentencing factors.  *Id.* at 3.  In arriving at this conclusion, the Court noted that Defendant did not take any predatory action, did not create MISEC, and did not actively distribute MISEC. *Id.*

### B.   Defendant's Term of Imprisonment

Defendant is currently incarcerated at FCI Texarkana.  PSR ¶ 3. Defendant has served approximately ninety-one months', or approximately 89% of his prison sentence, and is scheduled for release on September 12, 2021.[1]

Defendant has not had any disciplinary incidents since entering custody in 2013.  Resp. 10.  Instead, Defendant has sought to improve himself.  Mot. for Release Ex. C, at 7.  While serving his sentence, Defendant received a GED and a bachelor's degree in business administration.  *Id.*  Additionally, Defendant has taken various classes

---

[1] *Find an Inmate*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (search Reg. No. 88539-280) (last visited Nov. 19, 2020).

and obtained professional certificates.  *Id.*  Consequently, the Bureau of Prisons [hereinafter "BOP"] has classified Defendant as a "minimum" risk for recidivism.  *Id.*

### C.    COVID-19 at FCI Texarkana

As of the date of this Order, 337 inmates and 25 staff members are currently testing positive for the COVID-19 virus at FCI Texarkana.[2] BOP reports that no inmates at FCI Texarkana have died of COVID-19, and that eleven inmates have recovered.[3]

In response to the pandemic, BOP has enacted measures to safeguard the health of inmates in their custody.  Resp. 4.  Within FCI Texarkana, these measures include, *inter alia*, "limiting inmate movement to maximize social distancing; screening inmates involved in certain essential group activities; [and] isolating and testing symptomatic inmates . . . ."  Resp. 3–4.  In addition, BOP has "suspended official staff travel and training, has limited contractors to

---

[2] *COVID-19*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited December 8, 2020).

[3] *Id.*

those providing essential services" and screens anyone who enters the facility.  Resp.  4.

### D.    Defendant's Medical History

In 1996, Defendant was seriously injured in an automobile accident.  PSR ¶ 49.  As a result of the accident, Defendant was placed in a medically induced coma for one week.  *Id.*  Defendant required facial and cranial reconstruction surgery, along with a splenectomy—a medical procedure in which one's spleen is removed.  *Id.*; Mot. for Release 2.  The PSR noted in 2013 that, "[b]ecause of the splenectomy, [Defendant] runs an increased risk of bacterial infection, needs to stay away from encapsulated illnesses, and needs to receive vaccines for pneumonia, influence, meningitis, and tuberculosis."  PSR ¶ 49.

### E.    Defendant's Motions

On September 17, 2020, Defendant filed his Motion for Counsel and his Motion for Release.  In the former, Defendant alleges that he is unable to adequately represent himself because COVID-19 related restrictions have limited his access to the law library and thus requests the appointment of counsel.  Mot. for Counsel 1.  In the latter, Defendant avers that extraordinary and compelling reasons have arisen

6

that warrant a reduction in his sentence pursuant to 18 U.S.C.

§ 3582(c)(1)(A).  Mot. for Release 1.

In his Motion for Release, Defendant avers that his immune

system is "debilitated and compromised" because of the splenectomy.

*Id.* at 2.  Defendant alleges that he suffers from chronic sinus infections

and has previously sought emergency medical assistance after

contracting influenza because he is immunocompromised as a result of

having had his spleen removed.  *Id.* at 2–3.  Defendant contends that

the "spleen is an integral organ in fighting deadly pathogens."  *Id.* at 2.

Consequently, Defendant avers that he faces a "disproportionate risk of

bodily harm or death" if he contracts COVID-19.  *Id.*

Defendant represents that he has a strong release plan in place to

ensure his successful transition to society.  *Id.* at 13.  Defendant plans

to live near family in rural Utah, where he will register as a sex

offender.  *Id.*  Defendant avers that he has secured employment with a

family member that is aware of Defendant's criminal history and will

help Defendant abide by the conditions of his release.  *Id.*  In addition,

Defendant avers that he has arranged to receive medical treatment

from a family physician who is familiar with his medical history and

7

that Defendant's family will pay for his treatment until Defendant

receives insurance coverage from his employer.  *Id.*

Although Defendant recognizes that BOP is taking aggressive

measures to protect inmates from COVID-19, he argues that "[d]espite

[BOP's] best efforts, it is impossible for [Defendant] to practice 'social

distancing' to protect [himself]."  *Id.*  Accordingly, Defendant argues

that the "disproportionate risk of bodily harm or death" he faces

constitutes a compelling and extraordinary reason that warrants a

reduction in his sentence.  *Id.* at 2.

## II.   LEGAL STANDARDS

"As a general rule, federal courts 'may not modify a term of

imprisonment once it has been imposed.'" *United States v. Franco*, 973

F.3d 465 (5th Cir. 2020) (per curiam), *petition for cert. filed*, No. 20-5997

(U.S. Oct. 7, 2020) (quoting 18 U.S.C. § 3582(b)).  However, Congress,

by passing the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat.

5194 (2018), created an exception to this rule and empowered courts to

"reduce or modify a term of imprisonment 'if extraordinary and

compelling reasons warrant such a reduction.'" *United States v.

Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)).

"[A] defendant seeking compassionate relief must fully exhaust all administrative rights to appeal, which requires presenting the request to the BOP before seeking a resolution in federal courts." *United States v. Rivas*, No. 20-10360, 2020 U.S. App. LEXIS 34554, at *4 (5th Cir. Nov. 2, 2020). In addition, the proposed reduction must be consistent with the factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statement issued by the U.S. Sentencing Commission. *Id.*

The defendant carries the burden to show that extraordinary and compelling circumstances exist and warrant a reduction in his sentence. *United States v. Ennis*, No. EP-02-CR-1430-PRM-1, 2020 U.S. Dist. LEXIS 84957 (W.D. Tex. May 14, 2020) (Martinez, J.) (quotation omitted).

## III.  ANALYSIS

To obtain a reduction in his sentence, Defendant must demonstrate that (1) he has exhausted administrative remedies, (2) his circumstances are extraordinary and compelling, (3) his release is warranted in light of the applicable sentencing factors, and (4) his release would not endanger any other person or the community. Here, the Court is of the opinion that Defendant satisfies all four

requirements.  Accordingly, the Court concludes that Defendant's
Motion for Release should be granted.

### A.   Exhaustion of Administrative Remedies

A court may reduce a sentence only if "the defendant has fully
exhausted all administrative rights to appeal a failure of BOP to bring a
motion on the defendant's behalf or the lapse of 30 days from the receipt
of such a request by the warden of the defendant's facility, whichever is
earlier." *Franco*, 973 F.3d at 465 (quoting 18 U.S.C. § 3582(c)(1)(A)).

Here, Defendant filed a request for compassionate release with
the warden of FCI Texarkana on May 1, 2020.  Mot. for Release 10;
Resp. 5.  As thirty days have lapsed since the warden's receipt of
Defendant's request, the Court concludes that the exhaustion
prerequisite is satisfied.

### B.   Extraordinary and Compelling Reasons

A court "may reduce [a defendant's] term of imprisonment . . . if it
finds that extraordinary and compelling reasons warrant such a
reduction." § 3582(c)(1)(A)(i).  Although not binding, the Court draws
guidance from U.S.S.G. § 1B1.13, the U.S. Sentencing Commission's

relevant policy statement.  *United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020).[4]

Section 1B1.13 provides that a sentence reduction is appropriate when the court determines that "extraordinary and compelling reasons warrant the reduction."  In commentary to this statement, the Sentencing Commission explains that "extraordinary and compelling reasons exist" when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover."  U.S.S.G. § 1B1.13, Application Note 1(A)(ii).  Thus, the Court considers

---

[4] The Government contends that "[t]o state a cognizable basis for a sentence reduction," Defendant "must establish" that his conditions falls within one of the specific categories of medical conditions delineated in § 1B1.13.  Resp. 6.  The Fifth Circuit has rejected this argument, holding that district courts are "free to determine" whether medical conditions not contained in the policy statement warrant compassionate release.  *See Gonzalez,* 819 F. App'x at 284 (rejecting the argument that § 1B1.13 is "the dispositive boundary of what may be judicially determined to be extraordinary and compelling reasons); *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011) ("[T]he decision whether to ultimately grant a modification is left to the sound discretion of the trial court.").

whether Defendant's medical condition impedes his ability to care for himself within FCI Texarkana.

Here, Defendant avers that he suffers from a serious physical and medical condition—being immunocompromised as a result of having had his spleen removed—and that he is unable to protect himself from COVID-19 within the environment of a correctional facility.  Mot. for Release 4–6.  Specifically, Defendant argues that he is unable to practice social distancing, as recommend by the Centers for Disease Control and Prevention [hereinafter "CDC"], because he is housed in an "open dormitory with an excess of 100 other inmates" where he sleeps "within three to five feet of three other prisoners."  *Id.* at 5–6.  In addition, the risk he faces is exacerbated within his current correctional environment because over 115 inmates are required to share bathrooms and common areas, and because FCI Texarkana lacks "[a]ir scrubbing filtration systems" needed to reduce the spread of air borne contaminants.  *Id.* at 5.

Faced with scientific uncertainty regarding COVID-19, the Court considers Defendant's argument in light of the guidance offered by the CDC.  According to the CDC, COVID-19, a highly contagious

12

respiratory illness, spreads through close contact with other people and through respiratory droplets produced when an infected person coughs or talks.[5]  COVID-19 particles may "linger in the air for minutes to hours" and may "infect people who are further than 6 feet away from the person who is infected or after that person has left the space."  This type of airborne transmission is more likely to occur "within enclosed spaces that ha[ve] inadequate ventilation."  Thus, the CDC recommends that individuals "[s]tay at least 6 feet away from others," wear masks when around others, wash their hands regularly, "[a]void crowded indoor spaces and ensure indoor spaces are properly ventilated."

The CDC warns that "adults of any age" who have a weakened immune system or have undergone solid organ transplant *are at [an] increased risk* of severe illness."[6]  The spleen is an organ that "helps

---

[5] *How COVID-19 Spreads*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last updated October 28, 2020).

[6] *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated October 6, 2020) (emphasis in original).

fight infection and filters unneeded material" from the bloodstream.[7]

Individuals who have had their spleen removed are thus "more likely to

contract serious or life-threating infections" and may have a harder

time recovering from an illness.[8]

Defendant's spleen was removed in 1996.  Mot. for Release, Ex. A;

Resp. Ex. 1, at 19.  As a result of being asplenic, Defendant contends

that he is immunocompromised, as evinced by the "multiple serious

sinus infections" he suffers from each year.  Mot. for Release 4.

However, the Government argues that Defendant has not established

that he suffers from a serious medical condition because there are no

records reflecting his alleged history of sinus infections.  Resp. 8.

The CDC does not expressly address the vulnerability of asplenic

individuals, although the CDC cautions that "[m]any conditions and

treatments can weaken a person's immune system (making them

---

[7] *Splenectomy*, Mayo Clinic, https://www.mayoclinic.org/tests-
procedures/splenectomy/about/pac-20395066 (last updated July 14,
2020).

[8] *Id.*

'immunocompromised.')."[9]  The CDC further cautions that "[v]accines

are especially critical" for people that do not have a spleen.[10]

The Court "is mindful that the rapid spread of the virus inevitably

limits that ability of science to keep pace with the immediate needs of

those immunocompromised individuals currently incarcerated."  *United

States v. Arroyo*, No. EP-6-CR-479-PRM-1, 2020 U.S. Dist. LEXIS

118999, at *8 (W.D. Tex. June 23, 2020).  In the present case,

Defendant has offered evidence that he is immunocompromised as a

result of having had his spleen removed.  *See* PSR ¶ 49 ([B]ecause of the

splenectomy, [Defendant] runs an increased risk of bacterial infection,

[and] needs to stay away from encapsulated illnesses.").  Hence, the

Court is of the opinion that Defendant has demonstrated that he has a

weakened immune system and is, therefore, at an increased risk for

severe illness or death if he contracts COVID-19.  *See id.* at 9 (granting

---

[9] *If You Are Immunocompromised, Protect Yourself From COVID-19*,
CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/immunocompromised.html (last updated May 14, 2020)

[10] *Asplenia and Adult Vaccination*, CDC,
https://www.cdc.gov/vaccines/adults/rec-vac/health-
conditions/asplenia.html (last accessed Nov. 24, 2020)

early release on the assumption that if an asplenic inmate were
immunocompromised, he would "be at a disproportionate risk of bodily
harm or death in relation to his fellow inmates.").[11]

Moreover, Defendant has shown that his ability to protect himself
from COVID-19 is substantially diminished within a correctional
facility.  Defendant must share living quarters and a communal
bathroom with more than 100 other inmates.  Mot. for Release 5–6.  As
a result, Defendant is unable to practice social-distancing and self-
isolation, as recommended by the CDC.  Additionally, the Government
does not dispute the fact that FCI Texarkana lacks an air-filtration
system that can protect immunocompromised individuals by reducing
the likelihood of airborne transmission in enclosed spaces.  Thus,

---

[11] The Government argues that *Arroyo* is distinguishable from the
present case because the defendant in *Arroyo*—unlike Defendant—had
a documented history of contracting frequent and severe infections.
*Arroyo*, No. EP-6-CR-479-PRM-1, 2020 U.S. Dist. LEXIS 118999, at *8.
Defendant's failure to provide documentation establishing a history of
sinus infections does not undermine his request.  The CDC suggests
that Defendant has a higher likelihood of becoming fatally ill, or dying,
if contracts COVID-19 based on his underlying health conditions.
Hence, the Court is not persuaded that Defendant's failure to provide
documentation establishing a history of sinus infections justifies
exposing him to this risk.

obliging Defendant to remain incarcerated substantially increases the likelihood that he will contract COVID-19 and become severely ill.

For these reasons, the Court concludes that Defendant has demonstrated that he suffers from a serious physical condition that substantially diminishes his ability to provide self-care within FCI Texarkana.  Accordingly, the Court concludes that Defendant has demonstrated the existence of extraordinary and compelling reasons that warrant consideration of a sentence-reduction in his case.

### C.   Section 3353(a) Factors

Before reducing an inmate's sentence, a court must consider "the factors set forth in section 3553(a) to the extent they are applicable."  18 U.S.C. § 3582(c)(1)(A).  "Congress has instructed sentencing courts to impose sentences that are 'sufficient, *but not greater than necessary*, to comply with' (among other things) certain basis objectives, including the need for just punishment, deterrence, protection of the public, and rehabilitation."  *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 765–66 (2020) (quoting 18 U.S.C. § 3553(a)(2)).  Having considered the sentencing factors, the Court concludes that a sentence reduction is appropriate in Defendant's case.

17

Defendant pleaded guilty to an offense that carries a statutory minimum sentence of five years.  18 U.S.C. § 2252(b)(2).  Pursuant to the sentencing guidelines, a sentence between 188 to 235 months was suggested as appropriate.  PSR ¶ 45.  Nevertheless, the Court determined that a sentence of 120 months was sufficient, but not greater than necessary, to accomplish the purposes of the sentencing statute.  Statement of Reasons 3, Jan. 18, 2013, ECF No. 67.  Specifically, the Court noted that Defendant:  (1) did not engage in any predatory action, (2) did not create MISEC or participate in the activities depicted therein, (3) did not actively distribute MISEC, (4) cooperated with investigating agents, and (5) immediately accepted responsibility for his actions.[12]

---

[12] Prior to the sentencing hearing, Defendant was released on bond.  PSR ¶ 4.  Defendant complied with the conditions of his bond release, except for one minor infraction. *Id.*  As a result, the Court's granted Defendant's motion for return of cash bail.  Order for Return of Cash Bail, June 15, 2013, ECF No. 6.  Additionally, the Court allowed Defendant to self-surrender and granted him sixty days from the date of his sentencing to do so.  J. Crim. Case 3.  Defendant timely complied with the Court's order to self-surrender without incident.  Reply 4.

As the Court previously determined that a term of 120 months was appropriate, the Court now considers whether, in light of Defendant's post-sentencing conduct, early release is consistent with the sentencing factors.  *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (reasoning that "evidence of post-sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider").[13]

---

[13] The Government contends that *Pepper* does not require the Court to consider Defendant's post-sentence conduct because *Pepper* only applies when a defendant's sentence has been vacated on appeal.  Resp. 11–12. In support of this argument, the Government cites *United States v. Harris*, 643 F. App'x 340, 342 (5th Cir. 2016) (per curiam).  *Id.*  In *Harris,* the Fifth Circuit held that a court is not required to consider a defendant's post-sentencing rehabilitation evidence on a motion brought pursuant to § 3852.  *Harris*, 643 F. App'x at 342.  However, neither *Harris*— nor *Pepper*— purport to prohibit consideration of a defendant's post-sentencing conduct on a motion brought pursuant to § 3852.  *See generally id.*; *Pepper*, 562 U.S. at 481–88.  Indeed, other courts have considered a defendant's post-sentence conduct when assessing whether a sentence reduction is consistent with the § 3553(a) sentencing factors. *See United States v. Rosado*, No. 05-40011-FDS, 2020 U.S. Dist. LEXIS 85067, at *16 (D. Mass. May 14, 2020) (collecting cases where post-sentence conduct has been considered on a § 3582 motion).  Thus, the Court elects to exercise its discretion in considering Defendant's post-sentence conduct.

Since entering custody in 2013, Defendant has not received any disciplinary infractions.  Resp. 10.  To the contrary, Defendant has exhibited model inmate behavior.  Defendant has abided with the rules at FCI Texarkana while preparing himself for life outside of a penitentiary.  Mot. for Release, Ex. C at 1–7.  Defendant has advanced his education by receiving a GED, *id.* at 1, and a Bachelor of Arts in business administration from Tiffin University, *id.* at 5.  Moreover, Defendant has completed vocational training, *id.* at 1, and has received professional certifications, *id.* at 6, that will help him upon his release. BOP officials who reviewed Defendant's reentry plan on June 24, 2020 noted that Defendant "has not had any incident reports" and opined that "[h]is progress is good."  *Id.* at 2.

These facts indicate that the time Defendant has spent incarcerated has been sufficient to promote respect for the law and to deter Defendant from further criminal conduct.  Relatedly, a modest reduction of Defendant's sentence will not minimize the seriousness of his offense or otherwise frustrate the purpose of the sentencing guidelines.  Accordingly, the Court concludes that a sentence reduction is consistent with the § 3553(a) sentencing factors.

## D.     Danger to the Community

Pursuant to § 3553(a)(2)(C), a sentence must be sufficient "to protect the public from further crimes of the defendant.  *See also* U.S.S.G. § 1B1.13(2) (requiring that court determine that an inmate "is not a danger to the safety of any other person or to the community" before reducing the inmate's sentence).

The Court first notes that Defendant did not plead guilty to a crime of violence.  Although the underlying offense involved minors, Defendant cooperated with the investigating agents, PSR ¶¶ 23–24, immediately confessed and expressed remorse for his actions, PSR ¶ 12, and did not violate the conditions of his pre-trial release, PSR Ex. 4, at 5; Mot. for Release, Aff. ¶¶ 14–15.

In addition, Defendant has not had any disciplinary incidents since entering custody.  Mot. for Release, Ex. C, at 7.  To the contrary, BOP records demonstrate that Defendant has availed himself of educational and professional resources while serving his sentence.  *Id.* at 1–6.  Defendant's argument that his release will not endanger the community is further supported by BOP's PATTERN report.  *Id.* at 7.

According to the PATTERN report, which assesses an inmate risk of recidivism based on a matrix of multiple factors, Defendant is a "minimum" risk for recidivism and a "minimum" risk for violence. *Id.*

Defendant's minimum risk level is based on the fact that Defendant (1) has a minimal criminal history, (2) has successfully completed vocational and educational programs, (3) has not had any minor incidents in custody, (4) has not had any serious incidents in custody, (5) has no history of escapes, and (6) has no history of violence. *Id.* BOP's assessment, which was performed on June 24, 2020, thus indicates that Defendant's release will not endanger the public.

Moreover, the Court is not persuaded that obliging Defendant to remain incarcerated for an additional ten months is necessary to protect the community given that Defendant has successfully served approximately 90% of his sentence without incident.

The Court also considers the potential danger Defendant's release may pose in light of his proposed release plan. Defendant indicates that he hopes to live in rural Utah, near his family. Mot. for Release, Aff. ¶ 8. Defendant has secured an employment offer to work at Hansen Renovations alongside his family. *Id.* Defendant attests that Hansen

22

Renovations is familiar with his situation and will support Defendant's reintegration into society by providing whatever flexibility Defendant requires to comply with the conditions of his release.  Mot. for Release 13.  Defendant further attests that his family will pay for him to receive medical services from a family physician that is familiar with Defendant's history until such time as Defendant is able to obtain insurance from his employer.  Mot. for Release, Aff. ¶ 8.  Finally, Defendant maintains that he is familiar with the conditions of release that will be imposed upon him, all of which he promises to abide by.  *Id.* at ¶¶ 9–13.

Upon his release, Defendant will be required to register as a sex offender under the Sex Offender Registration and Notification Act.  J. Crim. Case 4.  Defendant will be required to "participate in a sex offender treatment program operated by a Licensed Sex Offender Treatment Provider (LSOTP) and/or other sex offender treatment program approved by the probation officer."  *Id.* at 6.  Defendant will be prohibited from possessing or using a computer, and from associating with any child under the age of eighteen, without first securing approval from his probation officer.  *Id.*  In addition, Defendant will be

23

required to abide by all "lifestyle restrictions or treatment requirements imposed by the therapist." *Id.* These restrictions are not exhaustive, and the Court is of the opinion that further conditions can be imposed to mitigate any additional concerns that may arise.

For the foregoing reasons, the Court determines that a modest reduction in Defendant's sentence will not endanger the community. Hence, the Court concludes that Defendant's Motion for Release should be granted. In light of this holding, the Court further concludes that Defendant's Motion for Counsel is moot and, therefore, should be denied.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Richard Hansen's "Motion for Compassionate Release and/or to Modify Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)" (ECF No. 72) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Richard Hansen's sentence shall be reduced to a term of time served as to Count One of the Indictment (ECF No. 10) in this case, effective the date of his release pursuant to the conditions of this Order.

**IT IS FURTHER ORDERED** that Defendant Richard Hansen may not be released from Bureau of Prisons Custody until which time the parties, and U.S. Probation have jointly submitted a release plan containing proposed terms and conditions for the Court's review, and the Court approves said release plan.

**IT IS FURTHER ORDERED** that Defendant Richard Hansen's release plan shall include a period of home confinement.

**IT IS FURTHER ORDERED** that U.S. Probation conduct the necessary inspections for all possible locations suitable for Charles Richard Hansen's placement upon his release. The Court **ADVISES** counsels that though Defendant suggests that a suitable placement may be near family in Utah, the Court shall require a detailed assessment before making that determination.

**IT IS FURTHER ORDERED** that the parties jointly submit the required release plan by no later than **December 16, 2020** at **5:00 p.m. Mountain Time.**

**IT IS FURTHER ORDERED** that Richard Hansen's release date shall be set once the Court has reviewed and approved the parties' release plan.

IT IS FINALLY ORDERED that Defendant Richard Hansen's

"Motion for Appointment of Counsel" (ECF No. 71) is DENIED.

SIGNED this 9th day of December, 2020.

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE